No. 97-665

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 50


WYMO LAND COMPANY,

Plaintiff and Respondent,

v.

RITA L. LUGGIE and JOSEPH A. LUGGIE,

Defendants, Third-Party Plaintiffs and Appellants,

and

THERESA K. MULLALY,

Defendant and Respondent,

v.

TYRONE D. HULTBERG, d/b/a Real Estate Unlimited,

Third-Party Defendant and Respondent.



APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

W. Arthur Graham, Quentin M. Rhoades; Sullivan & Tabaracci, Missoula,
Montana

For Respondents:

Martin S. King; Worden, Thane & Haines, Missoula, Montana
(for Theresa K. Mullaly)

William R. Baldassin, Attorney at Law, Missoula, Montana
(for Wymo Land Company)

David T. Markette, Attorney at Law, Hamilton, Montana

(for Tyrone D. Hultberg)

Submitted on Briefs: February 18, 1998
Decided:    March 10, 1998
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1   Appellants Rita L. and Joseph A. Luggie (the Luggies) appeal from the order of the Twenty-First Judicial District Court granting summary judgment in favor of Respondents Theresa Mullaly (Mullaly) and Wymo Land Company (Wymo).  We affirm.

¶2    The Luggies raise the following issues on appeal:

¶3   1. Did the District Court err in holding that the right of first refusal on parcel 14-10 merged into the subsequent contract for deed on parcel 14-9 and was therefore invalid?

¶4   2. Did the District Court err in holding that the Luggies were given notice of Mullaly's offer to buy parcel 14-9 and failed to timely exercise any right of first refusal they may have had?

Factual and Procedural Background

¶5    This dispute arises out of the sale of land in Granite Creek Ranches, a subdivision in Ravalli County, Montana.  Wymo owned and developed all of the lots in Granite Creek Ranches and began marketing the lots for sale through Respondent Tyrone Hultberg (Hultberg) of Real Estate Unlimited.  In 1995, the Luggies began negotiating with Hultberg for the purchase of one of the lots in Granite Creek Ranches, parcel 14-9.  Hultberg told the Luggies that Wymo required a minimum purchase price of $30,000 and identical terms on all of the lots in Granite Creek.  The Luggies informed Hultberg that if they were to purchase parcel 14-9, they also wanted a right of first refusal on parcel 14-10.

¶6   On September 15, 1995, Wymo and the Luggies entered into an agreement to sell and purchase parcel 14-9 (Luggie Buy-Sell).  A special provision addendum (Addendum) was attached to the Luggie Buy-Sell.  Paragraph 10 of the Addendum states:

Seller To Grant Purchasers A First Right Of Refusal And Not To Exceed 72 Hours On Parcel 14-10 Of Granite Creek Ranches, From The Time A Signed

Buy-Sell Agreement Is Produced To The Seller At A Price Of $30,000 And
Meets The Sellers Terms.

The parties dispute whether Hultberg or the Luggies drafted the Addendum and,
specifically,
who supplied the language for the Luggies' right of first refusal on parcel 14-10
(Right of
First Refusal).

¶7    At closing on November 3, 1995, Wymo and the Luggies executed a contract for
deed
on parcel 14-9 (Contract for Deed).  The Contract for Deed contains a standard merger
clause.  The Contract for Deed does not mention the Right of First Refusal, but does
incorporate other provisions of the Addendum.  The Luggies contend that no mention
was
made at closing of the Right of First Refusal.  However, Hultberg contends that he
specifically told the Luggies that the Contract for Deed did not contain the Right
of First
Refusal and that if they executed the contract, they would risk losing the right.

¶8    In June 1996, upon the Luggies' request, Hultberg prepared a buy-sell agreement
on
parcel 14-10.  The Luggies did not sign the agreement and, later that month, told
Hultberg
that they could not afford to purchase parcel 14-10 at that time.  In July 1996,
Mullaly, the
owner of parcel 14-11, approached Hultberg and told him that she was interested in
buying
parcel 14-10.  Hultberg told Mullaly that another party may have a right of first
refusal on
the property, but that he did not think they were interested in exercising it.  On
or about July
10, 1996, Hultberg and Mullaly executed a buy-sell agreement (Mullaly Buy-Sell).  The
Mullaly Buy-Sell did not mention the Right of First Refusal.  The same day, Hultberg
informed Barbara Glandt, a representative of Wymo, that he had received an offer on
parcel
14-10 and mailed her the Mullaly Buy-Sell.

¶9    Hultberg testified that on July 12, 1996, he spoke with Joseph Luggie at the
Granite
Creek property and informed him of the existence and terms of Mullaly's offer.
Hultberg
also testified that he spoke with Rita Luggie on the telephone on July 22 and
informed her
that the Right of First Refusal had been triggered.  On July 24, 1996, the Luggies
received
a certified letter from Hultberg, which stated, in relevant part:
This letter is to advise you that a signed Buy-Sell has been produced to the
Seller at the stated selling price of $30,000 and meeting the Sellers terms.
Although we have had verbal communication to this affect and evidently some

misunderstanding, I am reducing this to written form for everyone's concern.

Hultberg did not enclose a copy of the Mullaly Buy-Sell.

¶10 The Luggies state that they and their attorney, Randy Lint (Lint), made numerous, unsuccessful attempts to obtain a copy of the Mullaly Buy-Sell. After the Luggies received the certified letter, Lint called Hultberg to request a copy and was informed that the terms of the Mullaly Buy-Sell were identical to those in the Luggie Buy-Sell. Hultberg did not provide Lint with a copy of the Mullaly Buy-Sell, but did fax him a copy of the Luggie Buy-Sell.

¶11 On July 25, 1996, Lint informed Wymo's attorney, William Baldassin (Baldassin), that he would be out of town until July 30. On July 26, 1996, Baldassin faxed the Mullaly Buy-Sell to Lint's office. Lint did not read the fax until July 29, 1996 when he returned to his office. On July 31, 1996, the Luggies attempted to exercise the Right of First Refusal by sending Baldassin a letter postdated to July 25, 1996 and a $1,000 earnest money deposit.

¶12 On September 6, 1996, Wymo filed a complaint in the District Court seeking a determination of whether it had a contractual obligation with the Luggies or Mullaly. The Luggies and Mullaly filed answers, counterclaimed against Wymo for breach of contract, and cross-claimed against each other seeking a declaratory judgment of whether the Luggies had a valid right of first refusal and for intentional interference with contract. The Luggies also filed a third-party complaint against Hultberg, alleging negligence in the drafting of the Right of First Refusal.

¶13 Mullaly moved for summary judgment, arguing that the Right of First Refusal merged into and was extinguished by the Contract for Deed or, alternatively, that the Luggies failed to timely exercise the right. The Luggies filed a cross-motion for partial summary judgment, arguing that because the Right of First Refusal was a collateral agreement, it did not merge with the Contract for Deed. Hultberg filed a motion to dismiss the third-party complaint.

¶14  The District Court granted Hultberg's motion to dismiss and granted summary judgment in favor of Mullaly and Wymo.  The District Court held that the Right of First Refusal had merged into the fully integrated Contract for Deed and that the collateral agreement exception did not apply.  Alternatively, the District Court held that if the Luggies did have a valid right of first refusal, they did not exercise it timely.

### Discussion

¶15  The Luggies argue that the District Court erred in holding that the Right of First Refusal merged into the subsequent Contract for Deed.  However, we determine that the Luggies failed to exercise timely any right of first refusal they may have had.  Thus, we need not reach the issue of whether the District Court erred in holding the right was merged into the Contract for Deed.

¶16  The Right of First Refusal gives the Luggies 72 hours "from the time a signed buy-sell agreement is produced to the seller at a price of $30,000 . . ." in which to exercise the right.  (Emphasis added.)  Read literally, the Right of First Refusal does not require Wymo to give the Luggies any notice that an offer has been made; thus, the 72-hour period in which the Luggies had to exercise the Right of First Refusal could have commenced, run, and expired before they ever knew a buyer had made an offer.  The Luggies argue that unless the contract language is reformed to give them 72 hours "from the time a signed buy-sell agreement is produced to the buyer . . . ," the Right of First Refusal is rendered meaningless.  We need not decide whether the Right of First Refusal should be reformed because regardless of whether it reads "to the seller" or "to the buyer," the Luggies still failed to exercise timely the right.

¶17  Hultberg testified that he gave verbal notice of the Mullaly Buy-Sell to Mr. Luggie on July 12 and to Mrs. Luggie on July 22.  On July 24, 1996, the Luggies received a certified letter from Hultberg stating that Wymo had received an offer on parcel 14-10 and reciting the terms of that offer.  The same day, Hultberg informed the Luggies' attorney, Lint, that the terms of the Mullaly Buy-Sell were identical to the Luggie Buy-Sell and faxed him a copy of the Luggie Buy-Sell to review.

¶18  Relying on Tribble v. Reely (1976), 171 Mont. 201, 557 P.2d 813, the Luggies argue that the holder of a right of first refusal is entitled to more than actual notice of the existence of an offer.  In that case, Tribble owned a right of first refusal in the property he was leasing that had to be exercised "ten (10) days after notice to Lessees in writing of intention or offer to sell to a third party."  Tribble, 557 P.2d at 815.  Tribble received no written notice of the sale, but had actual notice that the defendants were attempting to purchase the property.  Tribble, 557 P.2d at 817.  This Court held:

> [T]here is a difference between merely knowing of a sale and knowing all the terms of that sale.  Such a distinction is crucial here because without knowing the terms of the sale, the plaintiffs could not meet the offer of defendants Reely and thus could not properly exercise their right of first refusal.

Tribble, 557 P.2d at 817.

¶19  In this case, the Luggies not only knew of Mullaly's offer, they had actual notice of the terms of the offer.  The Luggies argue that "under a reasonable, indeed, under the typical right of first refusal, its holders have a specified time period from receipt of written notice of the terms of an executed competing bid to exercise their rights."  However, they fail to note that they did receive written notice of the terms of Mullaly's offer in the certified letter that they received on July 24, 1996.  Further, the same day, Hultberg explained to Lint that the terms of Mullaly's offer were identical to those contained in the Luggie Buy-Sell and provided him a copy of the Luggie Buy-Sell.  Thus, the 72-hour period began to run, at the latest, on July 24, 1996.  The Luggies did not attempt to exercise the Right of First Refusal until July 31, 1996.  We hold that the District Court did not err in finding that the Luggies failed to exercise timely the Right of First Refusal.

¶20  Based on the foregoing, we affirm the decision of the District Court.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  J. A. TURNAGE
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER

/S/  JIM REGNIER